UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

DEMETRIUS ROBINSON and
TAMARA ROBINSON,

    Plaintiffs,

    v.

NATIONSTAR MORTGAGE LLC,

    Defendant.

Civil Action No. TDC-14-3667

**MEMORANDUM OPINION**

Plaintiffs Demetrius and Tamara Robinson (the "Robinsons") own a home in Damascus, Maryland that they purchased with a mortgage loan. After attempts to modify their loan failed, the Robinsons filed a Class Action Complaint against Defendant Nationstar Mortgage, LLC ("Nationstar") for alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.* (2012), and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 *et seq.* (West 2015). Presently pending is Nationstar's Motion to Dismiss Count Two of Plaintiffs' Class Action Complaint (the "Motion to Dismiss"), seeking dismissal of the MCPA claims. The Motion is fully briefed, and no hearing is necessary to resolve the issues. *See* Local Rule. 105.6 (D. Md. 2014). For the following reasons, the Motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

The following facts are presented as alleged in the Class Action Complaint and are confined to the facts relevant to resolving the pending Motion. On January 26, 2007, the Robinsons received a mortgage loan from Freemont Investment & Loan for $755,000.00, with an

interest rate of 7.990 percent, to purchase a home in Damascus, Maryland. Shortly afterward, Nationstar became the servicer of the loan.

Within a few years, the Robinsons, who own a small waste management and recycling services business, saw declines in their business revenue and, in turn, a substantial decrease in their household income. Under the existing monthly payment plan, the Robinsons could no longer afford to pay both their mortgage and income taxes. Thus, on March 4, 2014, Mr. Robinson mailed a loan modification application to Nationstar and submitted a copy online on March 7, 2014. At that point, a foreclosure sale had not yet been scheduled for the Robinsons' home. On March 18, 2014, the Robinsons received a proposed loan modification agreement from Nationstar that offered to reduce the interest rate by less than one percent, from 7.990 percent to 7.00 percent, for two years. Disappointed, the Robinsons appealed the proposal on April 10, 2014. The following day, when Mrs. Robinson called to confirm receipt of the appeal, a Nationstar customer service representative told her that Nationstar had erroneously double-counted the Robinsons' monthly income, which limited their loan modification options. The representative suggested that the Robinsons submit another appeal with the correct income, which the Robinsons did on April 15, 2014.

On May 5, 2014, Nationstar mailed a letter requesting that the Robinsons supplement their loan modification application with information that the Robinsons included with their original March 4 application. The Robinsons complied and resubmitted the requested information on May 30. On August 20, 2014, when Mrs. Robinson called to check on the status of the application, a Nationstar representative told her that the paperwork had gone to the wrong loss mitigation division and that the Robinsons needed to submit their application again. The Robinsons complied. On August 26, 2014, Nationstar mailed another letter acknowledging

receipt of the application but again requested the information provided in the March 4 application. The next day, the Robinsons resubmitted the requested documents a third time.

On September 9, 2014, Nationstar mailed a letter to the Robinsons denying their application for a loan modification on the basis that, even after reducing the monthly payment, the Robinsons' disposable income would still be negative. After Nationstar denied the loan modification application, the Robinsons were no longer able to afford the monthly payments and became delinquent on the loan. The Robinsons allege that Nationstar has assessed $256 per month in late fees, interest, and other fees due to the delinquency, and that they have spent considerable time and effort pursuing the loss mitigation process, time which they otherwise would have devoted to their struggling small business. They also allege that they have incurred administrative costs for postage, travel, photocopying, scanning, and faxes.

On November 21, 2014, the Robinsons filed suit against Nationstar on behalf of themselves and a class of similarly situated individuals nationwide. The Complaint asserts two claims. Under Count I, the Robinsons allege a violation of 12 C.F.R. § 1024.41, a regulation of RESPA that outlines loss mitigation procedures. Under Count II, the Robinsons allege unfair or deceptive trade practices in violation of the MCPA. Specifically, the Robinsons allege, that Nationstar engaged in an unfair or deceptive trade practice when it offered loan modifications to borrowers without the intent to provide them as offered and with the intent not to supply reasonably expected public demand. Md. Code Ann., Com. Law § 13-301(5). The Robinsons also allege that Nationstar violated another provision of the MCPA by failing to respond to their loan modification application within 15 days. Md. Code Ann., Com. Law § 13-316(c). Nationstar now moves to dismiss Count II.

**DISCUSSION**

**I.      Legal Standard**

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

**II.     Sections 13-301 and 13-303**

The MCPA prohibits, in relevant part, unfair or deceptive trade practices in the "sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services" and in the "extension of consumer credit." Md. Code Ann., Com. Law §§ 13-303(1), 13-303(4). Section 13-301(5) defines "unfair or deceptive trade practices" to include the "offer of consumer goods, consumer realty, or consumer services" without the "intent to sell, lease, or rent them as advertised or offered," or without the intent "to supply reasonably expected public demand." §§ 13-301(5)(i), 13-301(5)(ii).

The Robinsons, citing the definitions in Sections 13-301(5)(i) and 13-301(5)(ii),[1] allege that Nationstar violated the MCPA because it offered home loan modifications to borrowers with

---

[1] Both parties discuss Section 13-301(5) as providing a cause of action under the MCPA, but Section 13-301 only provides the definition of the term "unfair or deceptive trade practice." *See* Md. Code Ann., Com. Law § 13-301 (entitled "Unfair or deceptive trade practices defined"). The relevant cause of action is actually contained in Section 13-303. *See* § 13-303 ("A person may not engage in any unfair or deceptive trade practice . . . .").

no intention of actually providing any loan modifications, and "with the intent not to supply reasonably expected public demand." *See* Compl. ¶¶ 120–21. Nationstar argues that the Robinsons cannot bring a claim under the definition of "unfair or deceptive trade practices" in Section 13-301(5) because that definition does not apply to a loan modification.

Nationstar is correct. By its very terms, the definition in Section 13-301(5) applies only to "consumer goods, consumer realty, or consumer services." *See* Md. Code Ann., Com. Law § 13-301(5). Although the Robinsons assert that loan modifications are included in the term "consumer services," the MCPA separately defines the terms "consumer services" and "consumer credit." Md. Code Ann., Com. Law § 13-101(d)(1) (defining "consumer credit" as "credit . . . primarily for personal, household, family, or agricultural purposes" and "consumer services" as "services which are primarily for personal, household, family, or agricultural purposes"). In the provision barring unfair or deceptive trade practices, there are separate subparts barring the use of such practices in "[t]he sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services," § 13-303(1), and in "[t]he extension of consumer credit," § 13-303(4). If, as the Robinsons argue, loan modifications and similar loan activities are all encompassed by the term "consumer services," there would be no need for the separate "consumer credit" term.

Under these definitions, a loan modification would constitute an extension of consumer credit under the MCPA. *See Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 466 (D. Md. 2013) (finding that misrepresentations relating to a loan modification fall within the MCPA provision for extension of consumer credit).[2] It therefore does not fall within the term

---

[2] Although the MCPA does not explicitly define "extension of consumer credit," an analogous statute, the Maryland Credit Services Business Act, defines the term "extension of credit" as "the

"consumer services" under the MCPA and would not be subject to the various forms of unfair or deceptive trade practice limited to "consumer goods, consumer, realty or consumer services," including those defined in Section 13-301(5). *See Wiseman v. First Mariner Bank*, No. ELH-12-2423, 2013 WL 5375248, at *24 (D. Md. Sept. 23, 2013) (holding that provision of a reverse mortgage product constituted an "extension of consumer credit" and therefore was not subject to the definitions of "unfair or deceptive trade practices" that only referenced "consumer goods, consumer realty, or consumer services"). Because these definitions are inapplicable to loan modifications, the Robinsons' MCPA claim in Count II, relying on Sections 13-301(5)(i) and 13-301(5)(ii), is dismissed.

Concluding that the Robinsons cannot bring a claim alleging the forms of "unfair or deceptive trade practices" defined in Section 13-301(5), however, does not necessarily foreclose any claim under the MCPA. Other forms of "unfair or deceptive trade practices" under the MCPA do not expressly limit their application to "consumer goods, consumer realty, or consumer services." *See, e.g.*, Md. Code Ann., Com. Law § 13-301(1) (defining "unfair or deceptive trade practices as including any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers"); § 13-301(3) (defining "unfair or deceptive trade practices as including any the failure "to state a material fact if the failure deceives or tends to deceive"). Because the MCPA is liberally construed to protect consumers, *see* Md. Code Ann., Com. Law § 13-105, the conduct underlying the claims here arguably may

---

right to defer payment of debt or to incur debt and defer its payment, offered or granted primarily for personal, family, or household purposes." Md. Code Ann., Com. Law § 14-901 (West 2015). That this definition plainly encompasses a loan modification provides further support for the conclusion that a loan modification is "consumer credit" rather than a "consumer service" under the MCPA.

be asserted under another, more appropriate provision. *See Wiseman*, 2013 WL 5375248, at *24 (noting that Sections 13-301(1) and 13-301(3) may be applicable to claims relating to the extension of consumer credit). Thus, the Robinsons will be permitted to seek leave to amend their Complaint.

Because such MCPA claims sound in fraud, any amended MCPA claim must adhere to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead the circumstances of fraud with particularity. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (quoting Fed. R. Civ. P. 9(b)). "The circumstances include the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (citations and internal quotation marks omitted). In addition, under the MCPA, the claim would also need to allege an objectively identifiable "actual injury or loss." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007) (quoting *Citaramanis v. Hallowell*, 613 A.2d 964, 969 (Md. 1992)) (internal quotation marks omitted). "[T]he consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." *Id.* (citations omitted). This standard inherently requires the plaintiff to allege reliance in some form sufficient to sustain an actual injury or loss. *See id.*; *see also Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (stating that an MCPA claim requires reliance to show that the plaintiff sustained an actual injury or loss).

### III.    Section 13-316(c)

The Robinsons also assert a claim under Section 13-316(c) of the MCPA, alleging that Nationstar did not respond timely to consumer complaints or inquiries. *See* Compl. ¶ 122. Section 13-316(c) provides that a "servicer shall designate a contact to whom mortgagors may

direct complaints and inquiries" and that the "contact shall respond in writing to each written complaint or inquiry within 15 days if requested." Md. Code Ann., Com. Law §§ 13-316(c)(1), 13-316(c)(2). The Robinsons argue that the loan modification applications they submitted constitute inquiries and that Nationstar failed to respond to their May 30, 2014 application within 15 days. Nationstar did not acknowledge receipt of the application for nearly three months, prompting Mrs. Robinson to check on its status in August 2014. *See* Compl. ¶¶ 75, 76. Only during that phone call did Nationstar alert the Robinsons that there was an issue with their application. *See id.* ¶ 76.

Although Nationstar argues that a loan modification application is not an inquiry, courts have found that a loan modification application could qualify as an inquiry under the MCPA. *See, e.g.*, *Marchese*, 917 F. Supp. 2d at 467. Unlike an unsolicited complaint, a loan modification application, particularly one submitted at the request of Nationstar, necessarily seeks a response. *See* Md. Code Ann., Com. Law § 13-105 (noting that the MCPA is to be liberally construed to protect consumers). Given that this provision of the MCPA is not subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b), the Robinsons have sufficiently alleged economic damages. Compl. ¶¶ 88–89, 124; *see* Md. Code Ann., Com. Law § 13-316(e)(1). As a result, the motion to dismiss the claim under Section 13-316(c) is denied.

## CONCLUSION

For the foregoing reasons, and as stated in a separate order, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to the MCPA claim under Md. Code Ann., Com. Law §§ 13-301, 13-303. The Motion is DENIED as to the MCPA claim under Md. Code Ann., Com. Law § 13-316. Within 21 days, the Robinsons may

file a motion for leave to amend the complaint as to the MCPA claim under Md. Code Ann., Com. Law §§ 13-301, 13-303.  Any proposed amended complaint shall be filed as an attachment and in accordance with Local Rule 103.6 (D. Md. 2014).

Date: August 18, 2015                                              /s/
                                                              THEODORE D. CHUANG
                                                              United States District Judge